FILED

MAY 2 6 2011

CLERK, U.S. DISTRICT COURT
WESTERN DISTRICT OF TEXAS
BY_____
DEPUTY CLERK

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
WACO DIVISION

| | | |
|---|---|---|
| AURELIA FERNANDES, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| vs. | § | CIVIL ACTION NO. W11CA137 |
| | § | |
| WAYNE HAYES and BETTY | § | |
| BASKERVILLE | § | |
| a/k/a BETTY HAYES | § | |
| a/k/a BETTY CUNNINGHAM, | § | |
| | § | |
| Defendants. | § | JURY DEMAND |

## PLAINTIFF'S ORIGINAL COMPLAINT

TO THE HONORABLE COURT:

AURELIA FERNANDES, Plaintiff, complains of and against WAYNE HAYES and

BETTY BASKERVILLE a/k/a BETTY HAYES a/k/a BETTY CUNNINGHAM ("BETTY

BASKERVILLE"), Defendants, and for cause of action, shows:

### I.    INTRODUCTION

1.    This is an action brought by a domestic worker against her former employers for

violations of her rights under the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 201 et seq.,

the Trafficking Victims Protection Reauthorization Act ("TVPRA"), 18 U.S.C. § 1581 et seq.,

the Texas Theft Liability Act, Tex. Civ. Prac. & Rem. Code § 134.001 et seq., and state contract

and tort law.

2.    Defendants, through a pattern of actions that deliberately took advantage of

Plaintiff's poverty, unfamiliarity with American law and customs, and social isolation, forced

Plaintiff to work for them in their home and to work for others in order to avoid serious economic and immigration-related harm to herself and her family.  Defendants failed to pay Plaintiff for her work in their home, in violation of minimum wage laws and Defendants' contract with her.  Defendants intentionally confined Plaintiff to their home without her consent during her employment with them.  Defendants have retained the majority of Plaintiff's possessions since Plaintiff escaped from their home in October 2010 and sought help from law enforcement.  Plaintiff seeks declaratory, extraordinary, and injunctive relief and monetary damages for Defendants' violations of her rights.

## II.    JURISDICTION AND VENUE

3.    The jurisdiction of this Court is invoked pursuant to 28 U.S.C. § 1331 (conferring jurisdiction over claims arising under the laws of the United States) and 28 U.S.C. § 1337 (conferring jurisdiction over claims arising under acts of Congress regulating commerce).

4.    The federal claims in this action are authorized and instituted pursuant to 29 U.S.C. § 216(b) and 18 U.S.C. § 1595(a).

5.    This Court has supplemental jurisdiction pursuant to 28 U.S.C. § 1367 over Plaintiff's state law claims because the state law claims are so related to the federal claims that they form part of the same case or controversy under Article III of the United States Constitution.

6.    Venue is proper in this district pursuant to 28 U.S.C. § 1391(b) and 29 U.S.C. § 216(b).

7.    This Court is empowered to issue a declaratory judgment pursuant to 28 U.S.C. §§ 2201 and 2202.

8.      This Court has personal jurisdiction over the Defendants.

### III.    PARTIES

9.      Plaintiff AURELIA FERNANDES is an individual residing in Travis County, Texas.

10.     Defendant WAYNE HAYES is an individual residing in Coryell County, Texas. Defendant may be served with process at 1706 Benttree Drive, Apartment B, Killeen, Texas 76543.

11.     Defendant BETTY BASKERVILLE is an individual residing in Coryell County, Texas. On information and belief, Defendant also uses the names BETTY BASKERVILLE and BETTY CUNNINGHAM. Defendant may be served with process at 1706 Benttree Drive, Apartment B, Killeen, Texas 76543.

12.     At all times relevant to this action, Defendant WAYNE HAYES employed Plaintiff within the meaning of the FLSA, 29 U.S.C. §§ 203(d) and 203(g).

13.     At all times relevant to this action, Defendant BETTY BASKERVILLE employed Plaintiff within the meaning of the FLSA, 29 U.S.C. §§ 203(d) and 203(g).

### IV.    STATEMENT OF FACTS

14.     Plaintiff is a citizen of the country of India.

15.     Plaintiff met Defendants in the country of Kuwait in or around 2007, when Defendants hired Plaintiff to work for them as a live-in maid in their residence.

16.     Plaintiff worked for Defendants in Kuwait from in or around August 2007 through in or around August 2008.

17.     In the summer of 2008, Defendants told Plaintiff that they wanted her to come to the United States with them.

18.     Plaintiff was reluctant to come to the United States because, among other reasons, she was worried that she would not be able to see or take care of her family in India while in the United States.

19.     Plaintiff had a valid visa in Kuwait and did not want to give up her visa in order to go to the United States.

20.     Defendants made a number of promises to Plaintiff in order to convince her to agree to come to the United States with them.

21.     Defendants' promises to Plaintiff included: that Defendants would employ Plaintiff as a live-in maid in their home in the United States; that Defendants would pay for Plaintiff to visit India once per year; that Defendants would help Plaintiff's husband and children emigrate to the United States; that Defendants would help Plaintiff's children attend school in the United States; that Plaintiff would work for Defendants from 8 a.m. to 4 p.m. Monday through Saturday, with Sundays off; and that Plaintiff would be paid USD $1,996 per month for her work.

22.     During Plaintiff's visa application process, Defendants submitted a form to the United States Embassy in Kuwait that contained some of their promises to Plaintiff.  That form is attached as Exhibit A.

23.     Defendants promised Plaintiff that they would pay her twice the amount listed on the form attached as Exhibit A, for a total of USD $1,996 per month.

24.     Plaintiff accepted the terms of work offered to her by Defendants and described in paragraphs 21-23.

25.    Defendants paid all of Plaintiff's visa application fees and paid for her transportation to the United States.

26.    Defendants paid to ship all of Plaintiff's possessions in Kuwait from Kuwait to the United States.

27.    Defendants insisted on making the payments described in paragraphs 25-26 in order to encourage Plaintiff to come with them to the United States.

28.    Defendants obtained a B-1 visa for Plaintiff to come to the United States as a personal or domestic servant of Defendants.

29.    Before Defendants and Plaintiff left Kuwait, Defendant BETTY BASKERVILLE spoke with Plaintiff's children in India by phone and told them to apply for passports as soon as possible so that they could also come to the United States.

30.    Relying on Defendants' promises to her, Plaintiff agreed to come with Defendants to the United States, giving up her visa and work prospects in Kuwait.

31.    Defendants and Plaintiff arrived in the United States on or about September 1, 2008 and traveled from Atlanta, Georgia to the home of Defendants' relatives in or around Harvest, Alabama, in Madison County, Alabama.

32.    While living in Defendants' relatives' home in Harvest, Alabama, Defendants required Plaintiff to act as a live-in maid.

33.    Plaintiff worked for Defendants in Harvest, Alabama from September 2008 until April 2009.

34.    Plaintiff worked for Defendants as a live-in maid in Huntsville, Alabama from approximately April 2010 until approximately August 2010.

35.     Plaintiff worked for Defendants as a live-in maid in Killeen, Texas from approximately August 2010 until on or around October 23, 2010, when Plaintiff fled Defendants' home and contacted law enforcement for help.

36.     Plaintiff's duties while working for Defendants included cleaning, doing laundry, cooking, making the beds for all household members, and taking care of Defendants' grandchildren.

37.     Though Defendants had promised that Plaintiff would work for them from 8 a.m. to 4 p.m. from Monday through Saturday, with Sundays off, Plaintiff was made to work more than forty hours per week and was not given Sundays off.

38.     While living with Defendants in Harvest, Alabama and in Killeen, Texas, Plaintiff was forced to sleep on a couch in the living area of the house.

39.     In Harvest, Alabama, the room where Plaintiff slept was a space also inhabited by the family's dogs, who jumped on Plaintiff at night and prevented Plaintiff from getting a full night's rest. The space was inadequately heated in the winter months, and Plaintiff was given only one blanket to cover herself.

40.     While living with Defendants in Huntsville, Alabama, Plaintiff was forced to sleep in the same bed as Defendants' grandchildren.

41.     Plaintiff was not able to go to sleep until the members of the household had gone to sleep for the night, which sometimes did not occur until 12 a.m. or 1 a.m. Plaintiff had to get up when the members of the household began to get up, which often was as early as 7 a.m.

42.     Plaintiff has only 5 or 6 years of formal schooling.

43.     Plaintiff's husband suffered a severe injury in the 1990s that left him unable to work.

44.     After Plaintiff's husband was injured, Plaintiff became the sole breadwinner for her family.  Since then, Plaintiff has been responsible for supporting her extended family, including herself, her husband, her daughter, her son, her mother, her brother, her sister, her brother-in-law, and her nephew.

45.     Plaintiff moved to Kuwait on a work visa in 1997 in order to support her family when she could not find work in India and was unable to feed her family.

46.     During her employment with Defendants, Plaintiff believed that if her children were unable to matriculate in school they would be relegated to the life of poverty that she had led.

47.     Twice while Plaintiff was in Defendants' employ in the United States, Plaintiff's mother suffered a heart attack.

48.     Plaintiff is solely responsible for paying her mother's medical bills and was solely responsible for paying such bills when she was in Defendants' employ.

49.     Throughout Defendants' employment relationship with Plaintiff, Defendants knew that Plaintiff was the sole bread-winner for her extended family in India, knew that Plaintiff desperately wanted for her children to be educated, knew that Plaintiff's mother was ill, and knew that Plaintiff was solely responsible for paying her mother's medical bills.

50.     Plaintiff often reminded Defendants that her family in India needed her financial support and asked Defendants to pay her so that she could support them.

51.     Plaintiff often cried in Defendants' presence because she was worried about the well-being of her family and because she could not send money to them since she had not been paid.

52.     During Plaintiff's employment with Defendants, Defendants continually told Plaintiff that they would pay her in the future for the work she had performed for Defendants in the United States.

53.     Defendants promised Plaintiff that Defendants would pay her for the last month of her work in Kuwait if she worked for them in the United States.

54.     Defendants never paid Plaintiff for her last month of work for Defendants in Kuwait and never paid Plaintiff for her work in the United States.

55.     In or around May 2010, Plaintiff begged Defendants to pay her so that she could pay her daughter's enrollment fee at school in India.

56.     Defendants agreed to pay part of the school fee but delayed in transmitting the money to Plaintiff's family in India.

57.     On many occasions, Defendants grew angry when Plaintiff asked to be paid for her work.

58.     Defendants did not provide Plaintiff with adequate food during Plaintiff's employment with Defendants.

59.     Defendants designated food in their home as Defendants' food and told Plaintiff that she should not eat it.

60.     On one occasion in or around the fall of 2010, Defendant BETTY BASKERVILLE yelled at Plaintiff for eating some cereal in the kitchen when she was done working for the night.

61.     In or around March 2009, Defendant WAYNE HAYES confronted Plaintiff and asked her to show him how much toilet paper she was using when she used the restroom because Defendant said that the toilet paper was getting used up too quickly.

62.     From time to time during Plaintiff's employment with Defendants in the United States, Defendants gave Plaintiff money that she was required to place in the offering plate at Defendants' church.

63.     Defendants controlled Plaintiff's ability to earn money while she was living with them.

64.     Defendants pushed Plaintiff to work for others during her employment with Defendants.

65.     In or around April 2009, Defendants told Plaintiff that she should go and work with a family she had met at church.

66.     Defendants told Plaintiff that they would tell Plaintiff when they wanted her to come back to work for them.

67.     Throughout her work with the family she had met at church, Plaintiff remained in contact with Defendants.

68.     Plaintiff returned to live with Defendants in Defendants' apartment in or around Huntsville, Alabama in approximately April 2010.

69.     On one occasion in or around July 2010, Defendants forced Plaintiff to travel to New Orleans, Louisiana to clean trailers for a friend of Defendant BETTY BASKERVILLE. Plaintiff was placed on an all-male crew and made to work with dangerous chemicals and bleach that irritated Plaintiff's eyes.  Plaintiff was not given adequate food on this job and went hungry when she was working.  Plaintiff had been promised $80 per day for this work but was only paid $150 for four days of work, from which money was deducted for transportation and hotel.

70.     Plaintiff would not have performed the work described in paragraphs 65-69 if Defendants had not told her to do the work.

71.     Plaintiff would not have performed the work described in paragraphs 65-69 if Defendants had paid her for the work she did for Defendants.

72.     Defendants controlled Plaintiff's movements and associations while she was living with them.

73.     Throughout Plaintiff's employment with Defendants, Defendants locked Plaintiff in the home when they went out, without giving her a key.

74.     Defendants intentionally locked Plaintiff in the dwellings in which they lived with her.

75.     Plaintiff did not consent to being locked into the dwellings in which she lived with Defendants.

76.     Defendants had no legal justification or right to lock Plaintiff into the dwellings in which they lived with Plaintiff.

77.     With few exceptions, Defendants did not take Plaintiff with them when they left the house unless they were going to church or when they were shopping for a new home.

78.     Plaintiff is Catholic.

79.     In or around 2008, Plaintiff asked Defendants whether she could attend a Catholic church instead of Defendants' church.

80.     Defendants grew angry when Plaintiff asked to attend a church other than Defendants' church.

81.     Plaintiff had to ask permission to leave Defendants' home.

82.     Except when Defendants sent Plaintiff to work for other employers, and on a few occasions when Plaintiff asked permission to go to the Catholic church, Plaintiff never left Defendants' home without Defendants.

83.     Defendants did not tell Plaintiff where they were going when they left the house and did not tell Plaintiff their plans for moving her in the future.

84.     Plaintiff does not know how to drive a car.

85.     Throughout Plaintiff's employment with Defendants, Defendants lived in areas that were, on information and belief, isolated and inaccessible to bus lines or other public transportation.

86.     Plaintiff had to send money to her family in India each month while in Defendants' employ.

87.     Defendants knew that Plaintiff had to send money to her family as described in paragraph 86.

88.     Because of Defendants' failure to pay her, Plaintiff had to take out monthly loans in India in order to support her family.

89.     Plaintiff did not believe that she would be paid in the future for past work with Defendants if she left Defendants' employ.

90.     Because of Defendants' promises to her, Plaintiff believed that if she remained employed with Defendants, she would be paid in the future for her past work with Defendants.

91.     Plaintiff reasonably feared that she and her family would suffer economic harm if she did not continue to work for Defendants.

92.     Plaintiff remained employed with Defendants because she believed that if she remained with them they would pay her the money they owed her for her past work.

93.     Plaintiff is unfamiliar with American immigration laws and visa application procedures.

94.     After Defendants' and Plaintiff's arrival in the United States in 2008, Defendants kept Plaintiff's passport in their possession.

95.     Plaintiff did not know where Defendants kept her passport and had to ask them for her passport if she needed it.

96.     In or around May 2009, Plaintiff reminded Defendants that her B-1 visa was going to expire in July 2009 and asked Defendants to renew the visa.

97.     In or around May 2009, Defendants told Plaintiff that they would help her renew her visa.

98.     In or around July 2009, Defendants took $300 from Plaintiff and promised that they would apply for a visa extension.

99.     In or around August 2009, Plaintiff asked Defendants for a receipt for the $300 she had given them and asked whether Defendants had received any response to the visa extension application.

100.    When Plaintiff made the request described in paragraph 99, Defendant BETTY BASKERVILLE told Plaintiff that she could not have a receipt and that she had not received any response to the application.

101.    In or around September 2009, Plaintiff asked Defendants for a copy of the application they had filed for Plaintiff's visa extension.

102.    Defendants delayed in giving Plaintiff a copy of the application.

103.    In or around February 2010, Defendants again took USD $300 from Plaintiff and promised that they would apply again for a visa extension.

104.    In or around March 2010, Defendants told Plaintiff that the application for Plaintiff's visa extension had been accepted.

105.    In or around March 2010, Plaintiff asked for a copy of her purported new visa or for a copy of the response to the purported visa application.

106.    Defendants avoided giving or showing Plaintiff a copy of her purported new visa or for a copy of the response to the purported visa application despite Plaintiff's frequent requests to have or see such documents.

107.    Defendants said that they would keep Plaintiff's purported new visa and told Plaintiff not to worry.

108.    Defendants never showed Plaintiff the purported new visa or the response to the purported visa application.

109.    On information and belief, Defendants failed to apply for visa extensions when they told Plaintiff they would apply for the extensions.

110.    In or around March 2010, Defendants promised Plaintiff that they would take her to Washington, D.C. to renew her passport.

111.    Beginning in March 2010, Plaintiff reminded Defendants often that she needed to renew her passport, and Defendants promised her that they would help her renew her passport.

112.    On information and belief, Defendants never applied for a passport renewal for Plaintiff.

113.    Through the actions described in paragraphs 97-112, Defendants misled Plaintiff regarding the status of her visa and the status of her passport.

114.    On information and belief, Defendants intentionally made false statements to Plaintiff regarding applications for her visa extensions and passport renewal.

115.    Because of the actions described in paragraphs 97-114, Plaintiff was constantly anxious about her immigration status and the status of her passport.

116.    Defendants knew that Plaintiff was anxious about her immigration status because she frequently asked them whether they would help her apply for visa and passport extensions.

117.    During her employment with Defendants, Plaintiff reasonably feared that if she did not continue to work for Defendants she would not be able to obtain a renewal of her visa or her passport.

118.    Plaintiff continued to work for the Defendants because she believed their statements to her that they were going to take care of her visa and passport renewals.

119.    In or around March 2010, Plaintiff begged Defendants to let her return to India because she was worried that she would suffer immigration consequences if her passport expired before she left the United States.

120.    After Plaintiff made the statement described in paragraph 119, Defendant BETTY BASKERVILLE told Plaintiff that she was not going to go back to India.

121.    After Plaintiff made the statement described in paragraph 119, Defendant BETTY BASKERVILLE told Plaintiff that she would not be able to bring Plaintiff back to the United States if she went to India.

122.    When Plaintiff again begged Defendants to let her return to India, Defendant BETTY BASKERVILLE promised that she would take care of Plaintiff's passport and visa renewals and again told Plaintiff that she was not going to go back to India.

123.    During Plaintiff's employment with Defendants, Defendants restricted Plaintiff's contact with her family in India by limiting her use of Defendants' phone and computer.

124.    Plaintiff did not have a personal phone during part of her employment with Defendants.

125.    When Plaintiff did not have a personal phone, she had to rely on the use of Defendants' phone or computer in order to communicate with her family members.

126.    Defendants at times did not tell Plaintiff when her family members tried to contact her through Defendants' phone lines.

127.    When Plaintiff did obtain a personal phone, she had to rely on Defendants to pay for the phone.

128.    Each month beginning around July 2010, Plaintiff had to beg Defendants to pay her phone bill.

129.    Defendants were often late paying Plaintiff's phone bill or did not pay the bill at all.

130.    Defendants constantly told Plaintiff that she should not talk to anyone about her employment situation or immigration status.

131.    Defendants told Plaintiff that she should not tell her family members that anything was wrong.

132.    On one occasion, in or around August 2010, Plaintiff shared facts about her employment and immigration status with the friend of Defendants for whom Plaintiff had worked in New Orleans.

133.    When she learned that Plaintiff had spoken with her friend about her employment situation and immigration status, Defendant BETTY BASKERVILLE yelled at Plaintiff and asked her why she had talked to Defendants' friend.

134.    Because Plaintiff could not talk with anyone about her employment situation or immigration status, she remained ignorant of what could happen to her if she left employment with Defendants.

135.    Defendants' misrepresentations to Plaintiff regarding the status of her visa and passport and Defendants' restriction of Plaintiff's contact with the outside world combined to isolate Plaintiff from the world around her and cause her to fear that she would suffer immigration consequences if she left employment with Defendants.

136.    Plaintiff reasonably feared that she could be imprisoned or deported if she attempted to leave Defendants' employ and return to India.

137.    Plaintiff remained employed with Defendants because of the fears described in paragraph 136.

138.    Defendants controlled the location of Plaintiff's personal possessions during Plaintiff's employment with Defendants.

139.    When Defendants and Plaintiff first arrived in the United States in 2008, Defendants held Plaintiff's possessions, which had been shipped separately, for approximately one year.

140.    In August 2010, Defendants decided to move to Killeen, Texas.

141.    Defendants made a sudden move to Texas and did not give Plaintiff time to sort through her belongings in order to bring her valuables with her.

142.    Plaintiff was forced to leave the majority of her personal possessions, including important papers and family heirlooms, in Defendants' storage unit in Alabama in August 2010.

143.    The objects described in paragraph 142 are the personal property of Plaintiff and were Plaintiff's personal property in August 2010.

144.    The objects described in paragraph 142 are located in containers including, but not limited to, two large suitcases, two small suitcases, two large boxes, two medium boxes, and some small boxes.

145.    Defendants do not own or have any legal right to possess the objects described in paragraph 142.

146.    Defendants promised that they would bring Plaintiff's belongings to Texas after moving to Texas.

147.    Defendants never brought Plaintiff's belongings to Texas; on information and belief, Defendants are still keeping Plaintiff's belongings in their storage unit in Huntsville, Alabama.

148.    Plaintiff does not have access to Defendants' storage unit in Alabama and does not have the authority to remove her belongings from Defendants' storage unit.

149.    Plaintiff has not had any access to the possessions described in paragraph 142 since August 2010.

150.    Plaintiff has demanded return of the possessions described in paragraph 142 but Defendants have not returned them.

151.    In October 2010, Plaintiff realized Defendants were not going to pay her for her work and was under increasing financial stress because of her mother's health.

152.    On or around October 23, 2010, Plaintiff fled Defendants' home in Killeen, Texas and reported Defendants to the appropriate law enforcement authorities.

153.    Through the actions described in paragraphs 14-150, Defendants knowingly obtained and provided Plaintiffs' labor and services through a scheme, pattern or plan intended to cause Plaintiff to believe that if she would suffer serious harm, including, but not limited to, arrest and/or deportation, severe economic harm, and the loss of all of her worldly possessions if she did not provide her labor and services in accordance with Defendants' demands.

154.   Defendants did not pay Plaintiff the federally-mandated minimum wage for each hour she worked for Defendants.

155.   Defendants knew or showed reckless disregard for whether they were paying Plaintiff the federally-mandated minimum wage in compliance with the FLSA.

156.   Plaintiff provided valuable services to Defendants.

157.   Defendants knew Plaintiff expected to be paid for her services.

158.   Defendants secured Plaintiff's services through their promises to pay Plaintiff for her services.

159.   Defendants did not pay Plaintiff after she performed services for Defendants and asked to be paid.

160.   Defendants never sent Plaintiff to India from the United States to visit her family.

161.   Defendants never took any steps to help Plaintiff's husband or children come to the United States or to help Plaintiff's children attend school in the United States.

162.   Defendants did not pay Plaintiff USD $1,996 per month for her work for Defendants in the United States.

163.   Defendants required Plaintiff to work more hours than they had told her she would be working when the parties formed their agreement.

164.   Defendants required Plaintiff to work on Sundays.

165.   Throughout her employment with Defendants, Plaintiff complied with all of Defendants' requests that she perform work.

166.   All of the actions and omissions alleged in the paragraphs above were undertaken by the Defendants either directly or through their agents.

167.    All conditions precedent have been performed or have occurred.


## V.    FIRST CAUSE OF ACTION
## FAIR LABOR STANDARDS ACT

168.    Plaintiff reincorporates and realleges each of the foregoing paragraphs of this Complaint as if fully set forth herein.

169.    At all times relevant to this action, Plaintiff was employed by Defendants within the meaning of the FLSA, 29 U.S.C. §§ 203(d) and 203(g).

170.    At all times relevant to this lawsuit, Plaintiff was employed in domestic service in a household within the meaning of 29 U.S.C. § 206(f)(1).

171.    The Defendants failed to pay Plaintiff at least the federally mandated minimum wage for each hour she worked in a workweek, in violation of 29 U.S.C. § 206(a).

172.    Defendants have failed to keep complete records of hours worked and wages paid as required by 29 C.F.R. § 516.

173.    Defendants' failure to pay Plaintiff as specified above was willful.

174.    For these violations, Plaintiff is entitled to recover her unpaid minimum wages, an equal amount in liquidated damages, attorney's fees, and costs of court, pursuant to 29 U.S.C. § 216(b).

175.    Plaintiff attaches hereto her consent to sue.  See Exhibit B.


## VII.    SECOND CAUSE OF ACTION
## TRAFFICKING VICTIMS PROTECTION REAUTHORIZATION ACT

176.    Plaintiff reincorporates and realleges each of the foregoing paragraphs of this Complaint as if fully set forth herein.

177.    Defendants knowingly provided and/or obtained the labor or services of Plaintiff by means of a scheme, plan, or pattern intended to cause Plaintiff to believe that, if Plaintiff did not perform such labor or services, she or another person would suffer serious harm or physical restraint, in violation of the TVPRA, 18 U.S.C. § 1589(a).

178.    Pursuant to 18 U.S.C. § 1595, Plaintiff is entitled to compensatory and punitive damages and attorney's fees for Defendants' violation of the TVPRA.

## VIII.    THIRD CAUSE OF ACTION
## TEXAS THEFT LIABILITY ACT

179.    Plaintiff reincorporates and realleges each of the foregoing paragraphs of this Complaint as if fully set forth herein.

180.    Plaintiff provided a service to Defendants.

181.    Defendants knew the service was provided for compensation.

182.    Defendants intentionally or knowingly secured the performance of Plaintiff's services by agreeing to provide compensation and, after the service was rendered, failing to make payment after receiving notice demanding payment.

183.    Plaintiff sustained damages as a result of Defendants' theft of services.

184.    The above-described actions of Defendants constituted a violation of the Texas Theft Liability Act, for which Plaintiff is entitled to relief pursuant to Tex. Civ. Prac. & Rem. Code § 134.003 et seq.

## IX.    FOURTH CAUSE OF ACTION
## FALSE IMPRISONMENT

185.    Plaintiff reincorporates and realleges each of the foregoing paragraphs of this Complaint as if fully set forth herein.

186.   Defendants willfully detained Plaintiff.

187.   By detaining Plaintiff, Defendants deprived Plaintiff of her personal liberty.

188.   Defendants directly restrained Plaintiff's personal liberty.

189.   The detention was without Plaintiff's consent.

190.   The detention was without legal justification.

191.   Plaintiff suffered injury as a result of Defendants' unlawful detention.

192.   Plaintiff is entitled to compensatory damages, exemplary damages, and costs.

## X.   FIFTH CAUSE OF ACTION
## CONVERSION

193.   Plaintiff reincorporates and realleges each of the foregoing paragraphs of this Complaint as if fully set forth herein.

194.   Defendants wrongly exercised dominion or control over Plaintiff's personal property.

195.   Plaintiff is the owner of the property over which Defendants wrongly exercised dominion or control and was the owner of such property at the time Defendants wrongly exercised such dominion or control.

196.   Defendants refused to return Plaintiff's property after she demanded its return, or, in the alternative, Plaintiff's demand for the property's return would be futile.

197.   Plaintiff has the immediate right to the return of her property.

198.   Plaintiff suffered injury as a result of Defendants' wrongful exercise of control over her property.

199.   Plaintiff is entitled to the return of her property plus the loss of use of her property, the loss of value of her property, any other compensatory damages, exemplary

damages, and costs.

## XI.   SIXTH CAUSE OF ACTION
## BREACH OF CONTRACT

200.   Plaintiff reincorporates and realleges each of the foregoing paragraphs of this Complaint as if fully set forth herein.

201.   Defendants entered into an employment contract with Plaintiff.

202.   Plaintiff accepted the terms and conditions offered by the Defendants in such contract.

203.   Plaintiff was at all times ready, willing, and able to comply with the terms of the employment contracts and did in fact comply with the terms.

204.   Defendants breached their employment contract with Plaintiff by failing to comply with the promised terms and conditions of employment.

205.   As a direct consequence of Defendants' breach of the employment contract, Plaintiff suffered substantial injury.

206.   Plaintiff seeks damages for the harm she has suffered as a result of the Defendants' breach of contract.

207.   Alternatively, if there was no contract covering Plaintiff's work, Plaintiff is entitled to damages pursuant to the common law doctrines of *quantum meruit* and unjust enrichment.

## XII.   PRAYER FOR RELIEF

208.   WHEREFORE, Plaintiff requests that this Court grant her the following relief:

a.   Declare that Defendants, by their acts and omissions described above, violated Plaintiff's rights under the FLSA;

b.   Declare that Defendants, by their acts and omissions described above, violated 18 U.S.C. § 1589;

c.   Declare that Defendants, by their acts and omissions described above, violated the Texas Theft Liability Act;

d.   Declare that Defendants, by their acts and omissions described above, breached their contract with Plaintiff;

e.   Order Defendants to refrain from harming, interfering with, or destroying Plaintiff's property in their possession;

f.   Order Defendants to return Plaintiff's property in their possession;

g.   Award Plaintiff the loss of use of her property or, in the alternative, the loss of value of her property;

h.   Award Plaintiff her unpaid minimum wages, plus an equal amount in liquidated damages, for Defendants' violations of the FLSA minimum wage provision, 29 U.S.C. § 206;

i.   Award Plaintiff pre-judgment and post-judgment interest as allowed by law;

j.   Award Plaintiff her costs of court and costs of litigation;

k.   Award Plaintiff compensatory damages;

l.   Award Plaintiff punitive damages;

m.      Award Plaintiff attorney's fees pursuant to Tex. Civ. Prac. & Rem. Code 38.001,

29 U.S.C. § 216(b), Tex. Civ. Prac. & Rem. Code § 134.005(b), and 18 U.S.C. § 1595(a); and

n.      Award Plaintiff such other relief as this Court deems just and proper.

Dated:  May 25, 2011.

Respectfully submitted,

TEXAS RIOGRANDE LEGAL AID, INC.

Sarah E. Donaldson
Texas Bar No. 24065158
1111 N. Main Avenue
San Antonio, Texas 78212
(210) 212-3704
FAX: (210) 212-3772
sdonaldson@trla.org


ATTORNEYS FOR PLAINTIFF